# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| KWEKU HANSON, | : |
| Petitioner, | : |
| v. | : No. 3:10cv1725 (MRK) |
| CAROL CHAPDELAINE, | : |
| Respondent. | : |

# RULING AND ORDER

On November 2, 2010, *pro se* Petitioner Kweku Hanson filed his Petition for a Writ of Habeas Corpus [doc. # 1] pursuant to 28 U.S.C. § 2254. Mr. Hanson is currently imprisoned in Connecticut based on his guilty pleas to sexual assault in the second degree, in violation of Connecticut General Statutes § 53a-71(a)(1); risking injury to a child, in violation of Connecticut General Statutes § 53-21(a)(2); possessing child pornography in the first degree, in violation of Connecticut General Statutes § 53a-196d; and tampering with a witness, in violation of Connecticut General Statutes § 53a-151. Mr. Hanson asserts thirty-one different federal law claims for relief in his Petition, though many of those claims are overlapping.

Pending before the Court is Respondent Carol Chapdelaine's Motion to Dismiss [doc. # 13] Mr. Hanson's Petition. In support of that motion, Respondent argues that this Court should dismiss Mr. Hanson's Petition as a "mixed" petition that raises both exhausted and unexhausted federal law claims. *See Rhines v. Weber*, 544 U.S. 269, 271-72 (2005). For the reasons set forth below, the Court GRANTS Respondent's Motion to Dismiss and dismisses Mr.

Hanson's Petition without prejudice. Mr. Hanson should refile his current petition in this Court after he has first sought state court habeas relief.

**I.**

Mr. Hanson is a former attorney, who practiced law in Connecticut for eighteen years. *See State v. Hanson*, 117 Conn. App. 436, 440, 447 (2009). Between August 2004 and September 2005, Mr. Hanson engaged in sexual relationships with a fifteen-year-old girl and her fourteen-year-old cousin. *See id.* at 440. During that period Mr. Hanson videotaped and photographed himself having sex with the two teenage girls in his law office. *See id*. In September 2005, Mr. Hanson reported to the police that his digital video camera had been stolen from his car. *See id.* When the police found the camera thief – the sister of one of the victims – the thief reported that the camera contained a MiniDV cassette that appeared to depict Mr. Hanson having sex with one of the victims. *See id.*

Based on that conduct, Mr. Hanson eventually pleaded guilty in the Connecticut Superior Court to charges of sexual assault in the second degree, risking injury to a child, and possessing child pornography in the first degree. *See id.* at 441. He also pleaded guilty to witness tampering – after some of the other charges against him had been filed, Mr. Hanson threatened one of the victims and offered to pay her money to retract statements she had made to the police. *See id.* at 440-41. Based on Mr. Hanson's plea, the prosecution recommended that the Superior Court impose a sentence of twenty-five years imprisonment, to be suspended after six years, and thirty years probation. *See id.* at 441. The Superior Court denied Mr. Hanson's motion to withdraw his guilty plea and sentenced him to twenty-five years imprisonment, to be suspended after six years, and thirty years probation. *See id.* at 442-43.

Mr. Hanson filed an appeal in the Connecticut Appellate Court. *See id.* at 438. The *pro se* brief Mr. Hanson submitted to the Appellate Court is peculiar, especially in light of the fact that Mr. Hanson practiced law in Connecticut for nearly two decades. *See* Appellate Ct. Br., App. B to Mot. to Dismiss. The seventeen-page-long facts section of the brief begins with the heading: "Genesis (Facts) and Anatomy (Procedural History) of Case . . . Sex Lies and Videotapes." *Id.* at 1. The twenty-three-page-long argument section of the brief begins with the heading: "Apologia: Pestiferous Prosecution Parodying Due Process." *Id.* at 18. The argument section includes a laundry list of twenty state and federal claims, most of which are supported by only a single short paragraph of analysis. Those claims are: (1) that his plea was involuntary because he accepted it while under the influence of "hallucinatory" medication, *id.* at 19 (citing *Brady v. United States*, 397 U.S. 742, 750 (1970)); (2) that he was denied the right to plead *nolo contendere*, *see id.* (citing, among others, *Hudson v. United States*, 272 U.S. 451, 457 (1926)); (3) that his plea was invalid due to the State's breach of a plea agreement, *see id.* at 19-20 (citing, among others, *Santobello v. New York*, 404 U.S. 257, 261-63 (1971)); (4) that the Superior Court judge's plea canvass was constitutionally defective, *see id.* at 20 (citing, among others, *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)); (5) that *Brady* violations invalidated his plea, *see id.* at 21-22 (citing, among others, *Brady*, 397 U.S. at 742); (6) that prosecutorial misconduct invalidated his plea, *see id.* at 23 (citing, among others, *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); (7) that the prosecution improperly punished him for alleging a *Brady* violation by adding a new charge against him, *see id.* at 27 (citing, among others, *Blackledge v. Perry*, 417 U.S. 21, 28 (1974)); (8) that he was improperly denied access to a law library or legal resources, *see id.* at 30 (citing, among others, *Bounds v. Smith*, 430 U.S. 817, 821 (1977)); (9) that he was improperly denied access to trial preparation materials from his attorney, *see id.* at 30 (citing,

among others, *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)); (10) that the State was deliberately indifferent to his medical needs while he awaited trial, *see id.* at 31 (citing, among others, *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); (11) that Judge Gold of the Superior Court should have recused himself for bias, *see id.* at 32-33 (citing, among others, *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)); (12) that Mr. Hanson's arrest warrant was invalid because it was not obtained from a detached and neutral magistrate, *see id.* at 33 (citing, among others, *Johnson v. United States*, 333 U.S. 10, 14 (1948)); (13) that Judge Prescott of the Superior Court should have recused himself for bias, *see id.* at 34-35 (citing Model Code of Jud. Conduct Canons 2 and 3 (2007)); (14) that the search of Mr. Hanson's MiniDV videotape was unreasonable, *see id.* at 35-36 (citing Conn. Const. art. I, § 7); (15) that warrantless forensic searches of his computers were unreasonable, *see id.* at 36-37 (citing, among others, *United States v. Bedford*, 519 F.2d 650, 655 (3d Cir. 1975)); (16) that his plea was not voluntary because he received ineffective assistance from Attorney Aaron Romano, *see id.* at 37 (citing, among others, *Strickland v. Washington*, 466 U.S. 668, 692 (1984)); (17) that Judge Koletsky of the Superior Court abused his discretion by refusing to allow Mr. Hanson to withdraw his guilty plea, *see id.* at 38 (citing Conn. Practice Book § 39-27); (18) that Judge Koletsky of the Superior Court abused his discretion by failing to *sua sponte* order an evidentiary hearing on Mr. Hanson's motion to withdraw the guilty plea, *see id.* at 38-39 (citing *State v. Rish*, 17 Conn. App. 447, 455 (1989)); (19) that Mr. Hanson lacked notice of the charge against him for possessing child pornography in the first degree, *see id.* at 39 (citing no law); and (20) that his convictions for sexual assault in the second degree and risking injury to a child "violated double jeopardy," *id.* (citing no law).

On October 6, 2009, the Appellate Court issued an opinion affirming Mr. Hanson's conviction, but reaching the merits of only two of the twenty claims that Mr. Hanson had raised in his brief. *See Hanson*, 117 Conn. App. at 436. First, the Appellate Court rejected Mr. Hanson's claim that the Superior Court "abused its discretion in denying his motion to withdraw his pleas because the court's plea canvass failed to satisfy the requirements of Practice Book §§ 39-19(2), (3), (4), and 39-20." *See id.* at 443. Second, the Appellate Court rejected Mr. Hanson's claim that the Superior Court abused its discretion by failing to *sua sponte* order an evidentiary hearing on his motion to withdraw his guilty plea. *See id.* at 453. The Appellate Court's opinion explicitly left unresolved a third claim – that Mr. Hanson received ineffective assistance of counsel from Attorney Romano on his motion to withdraw his plea – noting that the "claim would be more appropriately raised through a petition for a writ of habeas corpus." *Id.* at 451.

The Appellate Court's resolution of the other seventeen claims raised in Mr. Hanson's brief was somewhat ambiguous. The Appellate Court observed that Mr. Hanson "raised numerous nonjurisdictional claims regarding defects that he alleged occurred during the police investigation and pretrial process," but said that it "decline[d] to review the merits of th[o]se claims." *Id.* at 454-55. The Appellate Court initially reasoned that "defendant's brief is inadequate in its legal arguments and recitation of facts necessary to sustain" those claims, *id.* at 455, relying on the Appellate Court's prior decision in *Marlow v. Starkweather*, 113 Conn. App. 469, 472 (2009) ("[A]ppellate courts 'are not required to review issues that have been improperly presented . . . through an inadequate brief . . . . Analysis, rather than mere abstraction, is required in order to avoid abandoning an issue by failure to brief the issue properly.'" (quoting *Ward v. Greene*, 267 Conn. 539, 546 (2004))). However, the Appellate Court also went on to hold: "Because the defendant knowingly and voluntarily entered his guilty pleas, he thereby waived

5

his right to challenge on appeal any nonjurisdictional claims arising from the pretrial process." *Hanson*, 117 Conn. App. at 457. In support of that latter portion of its reasoning, the Appellate Court relied on the Connecticut Supreme Court's decision in *State v. Johnson*, 253 Conn. 1, 80 (2000), and the United States Supreme Court's decision in *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise . . . claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.").

Mr. Hanson filed a petition for certification in the Connecticut Supreme Court. *See* Pet. for Certification, App. F to Mot. to Dismiss. Mr. Hanson's ten-page-long petition lists as one of the four questions presented: "Whether, based on the totality of the record before it, the Appellate Court properly determined . . . that Defendant's guilty plea was knowing and voluntary." *Id.* at 1. It also lists as an additional question presented: "Whether the Appellate Court properly declined to fully review Defendant's constitutional claims . . . ." *Id.* at 1. The Connecticut Supreme Court issued a brief order denying Mr. Hanson's petition without providing its reasoning for doing so on February 25, 2010. *See State v. Hanson*, 295 Conn. 907 (2010).

Mr. Hanson also filed a petition for a writ of certiorari from the United States Supreme Court. *See* Pet. for Writ of Certiorari, App. F. to Mot. to Dismiss. The three questions presented listed in his petition for a writ of certiorari all relate to the voluntariness of his plea. *See id.* at i. The United States Supreme Court issued a brief order denying Mr. Hanson's petition on October 18, 2010. *See Hanson v. Connecticut*, 131 S. Ct. 425 (2010).

Mr. Hanson filed his Petition in this Court on November 2, 2010, without first seeking to obtain state court habeas relief. On November 5, 2010 the Court ordered Respondent to show cause why the relief sought by Mr. Hanson should not be granted. *See* Order [doc. # 2]. The

Court extended the deadline for a response to its show cause order three times, and Respondent eventually filed the pending Motion to Dismiss on January 31, 2011. Respondent's only argument in support of the motion is that Mr. Hanson's petition is a mixed petition that asserts both exhausted and unexhausted federal law claims. *See Rhines*, 544 U.S. at 271-72.

The Court received Mr. Hanson's response to the Motion to Dismiss on April 1, 2011. *See* Mem. in. Opp'n [doc. # 18]. In opposition to that motion, Mr. Hanson argues that under the Rules Governing Section 2254 Cases in the United States District Courts ("the Habeas Rules"), *see* 28 U.S.C. foll. § 2254, it is improper for a respondent to file a motion to dismiss rather than an answer to a § 2254 habeas petition. He further argues that any failure to exhaust claims should be excused for a variety of reasons. Finally, he argues that even if some of his claims are not exhausted, the Court should stay and hold in abeyance his petition rather than dismissing it outright.

## II.

A state prisoner seeking federal habeas review under 28 U.S.C. § 2254 generally must exhaust all available state court remedies prior to filing a federal habeas petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Galdamez v. Keane*, 394 F.3d 68, 73 (2d Cir. 2005), *cert. denied*, 544 U.S. 1025 (2005). *But see* 28 U.S.C. § 2254(b)(1)(B) (providing that a federal court may grant a writ of habeas corpus if "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant"); *id.* § 2255(b)(2) (providing that a federal court may deny a habeas petition on the merits, notwithstanding the petitioner's failure to exhaust available state court remedies). To exhaust state court remedies, a prisoner must fairly present the factual as well as the legal premises of his or her federal law claims to the highest state court

capable of reviewing them. *See Cotto v. Herbert*, 331 F.3d 217, 237 (2d Cir. 2003). The Supreme Court has warned against interpreting the exhaustion requirement too narrowly. A state prisoner must only "give state courts a *fair* opportunity to act on [his or her federal law] claims." *O'Sullivan*, 526 U.S. at 844. That requirement is satisfied if the federal law "claim[s] presented to the state court . . . [were] the 'substantial equivalent' of the claim[s] raised in the federal habeas petition." *Jones v. Keane*, 329 F.3d 290, 295 (2d Cir. 2003) (citations omitted).

Before Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 *et seq.*, this Court was required to dismiss "mixed" habeas petitions containing both exhausted and unexhausted federal law claims. *See Rose v. Lundy*, 455 U.S. 509, 510 (1982). That requirement left habeas petitioners with only two choices: either return to state court to exhaust their federal law claims, or amend and resubmit petitions presenting only their exhausted federal law claims. *See id.* However, the enactment of AEDPA's one-year limitations period for filing a federal habeas petition, *see* 28 U.S.C. § 2244(d)(1), created a new risk that petitioners who came to federal court with mixed petitions might run the risk of forever losing ther opportunity for *any* federal review of their unexhausted claims. *See Rhines*, 544 U.S. at 277; *see also Zarvela v. Artuz*, 254 F.3d 374, 280 (2d Cir. 2001) ("[W]e think that the enactment of AEDPA warrants some adjustment in the pre-AEDPA requirement . . . that mixed petitions be dismissed in their entirety.").

After the Supreme Court's decision in *Rhines v. Weber*, 544 U.S. at 269, this Court now has a third option when confronted with a mixed petition. *See id.* at 277.[1] Rather than dismissing a mixed petition outright, the Court may order a stay and abeyance of a prisoner's habeas petition if it finds that there was good cause for the petitioner's failure to exhaust his or her claims in state

---

[1] Of course, the Court may also decide to reach the merits of a petitioner's unexhausted claims, so long as the Court ultimately denies his or her petition. *See* 28 U.S.C. § 2254(b)(2).

court. *See id.* Stay and abeyance may be appropriate if the petitioner has not engaged in any intentionally dilatory litigation tactics and also brings potentially meritorious claims. *See id.* at 278. On the other hand, dismissal likely is the appropriate choice if the petitioner has engaged in abusive litigation tactics or intentional delay. *See id.*[2]

Serious consequences can flow from a petitioner's decision to amend and refile a petition asserting only exhausted claims following dismissal of a mixed petition instead of going back to state court to exhaust still-available remedies on all of his or her federal claims. AEDPA requires federal courts to dismiss any claim presented in a second or subsequent habeas corpus application that was presented in a prior habeas corpus application. *See* 28 U.S.C. § 2244(b)(1). AEDPA also requires federal courts to dismiss virtually all other claims in second or subsequent habeas corpus applications, even if they were *not* presented in any prior habeas corpus application. *See id.* § 2244(b)(2). Thus, when a petitioner elects to amend and refile, he or she typically loses any opportunity to obtain federal review of the unexhausted claims that he or she stripped out of the original petition.

### III.

### A.

As a preliminary matter, Mr. Hanson is incorrect that the Habeas Rules, *see* 28 U.S.C. foll. § 2254, required Respondent to file an answer to his Petition rather than a motion to dismiss. In *Browder v. Director of the Department Corrections of Illinois*, 434 U.S. 257 (1978), the United States Supreme Court observed in dicta that the motion to dismiss filed in response to the § 2254 habeas petition in that case was "inappropriate." *Browder*, 269 n.14. But the petition at issue in *Browder* was filed prior to the enactment of the current version of the Habeas Rules,

---

[2] Dismissal for failure to exhaust does not amount to adjudication on the merits, and does not render a subsequent petition second or successive within the meaning of AEDPA. *See Turner v. Artuz*, 262 F.3d 118, 122 (2d Cir. 2001) (per curiam).

which took effect on February 1, 1977. *See Browder*, 434 U.S. at 265 n.9; *Tomoney v. Warden, S.C.I. Graterford*, No. Civ. A. 01-0912, 2002 WL 1635008, at *2 (E.D. Pa. July 17, 2002).

Nothing in the current version of the Habeas Rules prohibited Respondent from filing a motion to dismiss Mr. Hanson's petition, rather than an answer. *See Marte v. Brown*, No. 09cv1036 (RJS) (KNF), 2009 WL 4405803, at *2 n.1 (S.D.N.Y. Dec. 1, 2009); *Tomoney*, 2002 WL 1635008, at *2. Under Rule 5(a) of the Habeas Rules, a respondent need only file an answer to a § 2254 petition if the habeas court orders the respondent to do so. In addition, under Rule 11 of the Habeas Rules, the *Federal Rules of Civil Procedure* may be applied in a habeas case, to the extent they are not inconsistent with any statute or with the explicit requirements of the Habeas Rules. When this Court ordered Respondent to show cause why the relief Mr. Hanson sought in his Petition should not be granted, *see* Order to Show Cause [doc. # 2], it did not specifically require Respondent to file an answer. Thus, nothing prevented Respondent from moving to dismiss Mr. Hanson's Petition. This Court regularly entertains motions to dismiss filed in response to § 2254 habeas petitions, and the Court does so here again without hesitation.

**B.**

As discussed above, Mr. Hanson asserts a host of overlapping claims for habeas relief before this Court, just as he presented a number of claims to the Connecticut Appellate Court. His Petition lists the following thirty-one purportedly federal law claims: (1) that his plea was involuntary as a result of a defective plea canvass; (2) that his plea was involuntary because he was not permitted to plead *nolo contendere*; (3) that his plea was involuntary because he was suffering from physical pain when he entered it; (4) that his plea was involuntary because he was under the influence of prescription drugs; (5) that his plea was involuntary due to a *Brady* violation by the prosecution, *see Brady*, 397 U.S. at 87; (6) that his plea was involuntary because

10

the prosecution's *Brady* violation effectively forced him to plead guilty;[3] (7) that his plea was involuntary because of misrepresentations by the prosecution; (8) that his plea was involuntary because of misrepresentations by the police; (9) that his plea was involuntary because the prosecution harassed potential defense witnesses; (10) that his plea was involuntary because the prosecution retaliated against him for attempting to put on a defense; (11) that his plea was involuntary because the prosecution breached earlier plea bargains; (12) that his plea was involuntary because he received ineffective assistance from Attorney Romano in deciding whether to accept the plea; (13) that his plea was involuntary because of a conflict of interest between him and Attorney Romano, who had prior contact with a possible witness; (14) that his plea was involuntary because he did not have access to a law library or any legal resources after he started defending himself; (15) that his plea was involuntary because he was prevented from obtaining trial preparation materials from Attorney Romano; (16) that his plea was involuntary because it resulted from deliberate indifference to his medical needs;[4] (17) that his plea was involuntary because of the Superior Court judge's bias against him; (18) that his plea was involuntary because his arrest warrant was obtained in violation of the Fourth Amendment; (19) that his plea was involuntary because the Superior Court judge's bias against him left him no choice but to plead guilty;[5] (20) that his convictions for second degree sexual assault and risk of injury to a child based on the same conduct violated the Double Jeopardy Clause of the Fifth Amendment; (21) that his plea was involuntary because the prosecution dropped a charge of

---

[3] The Court is unable to discern any real difference between the Sixth Claim and the Fifth Claim, both of which allege that Mr. Hanson's plea resulted from *Brady* violations.

[4] The Sixteenth Claim in essence duplicates the Third Claim, which alleges that Mr. Hanson's plea resulted from the fact that he was suffering from debilitating physical pain at the time of plea hearing. Notably, the Sixteenth Claim is also in some tension with the Fourth Claim, which alleges that Mr. Hanson was receiving medication at the time of the plea hearing.

[5] The Nineteenth Claim and the Seventeenth Claim appear to allege that two different Superior Court judges were biased against Mr. Hanson.

possessing child pornography in the third degree and replaced it with a charge of possessing child pornography in the first degree;[6] (22) that his conviction was unconstitutional because it resulted from a warrantless search of his MiniDV tape, in violation of the Fourth Amendment; (23) that his plea was involuntary and conviction invalid because they resulted from an unreasonable forensic examination of his property, in violation of the Fourth Amendment; (24) that his conviction for first-degree child pornography possession violated the Ex Post Facto Clause of Article I, Section 10, Clause 1; (25) that his conviction was unconstitutional because Attorney Donald Freeman provided him with ineffective assistance in arguing his motion to withdraw his guilty plea; (26) that his conviction resulted from the Superior Court's improper denial of his motion to withdraw his guilty plea without first holding an evidentiary hearing; (27) that his conviction resulted from the Superior's Court judge's violation of Mr. Hanson's right to an open courtroom and the Superior Court's interference with Mr. Hanson's relationships with defense counsel; (28) that his conviction resulted from the ineffective assistance he received from Attorney Romano in preparing his defense; (29) that his conviction resulted from the ineffective assistance he received from Attorney Freeman at sentencing; (30) that his conviction resulted from the ineffective assistance he received from Attorney Salvatore Bonnano, who among other things failed to inform Mr. Hanson that the presiding Superior Court judge rejected an earlier and more favorable plea bargain; and (31) that his sentence exceeded the maximum permissible sentence based on the facts that he admitted at the sentencing hearing, *see Blakely v. Washington*, 542 U.S. 296, 303 (2004).

Respondent concedes that Mr. Hanson has exhausted his First Claim and his Twenty-Sixth Claim. However, Respondent argues that Mr. Hanson has failed to exhaust his other

---

[6] The Court is unable to discern any real difference between the Twenty-First Claim and the Tenth Claim, both of which allege that the prosecution added new charges against Mr. Hanson in retaliation for his attempts to defend himself.

twenty-nine claims. For his part, although Mr. Hanson never filed a response to Respondent's Motion to Dismiss, he conceded when he filed his Petition that he did not exhaust his Twenty-Fifth Claim, Twenty-Eighth Claim, Twenty-Ninth Claim, and Thirty-First Claim, and argued that the Court should excuse his failure to exhaust those four claims. *See* Pet. [doc. # 1-2] at 32-33, 50-51, 53, 60. He also apparently recognized at the time he filed his Petition that he may not have exhausted his Twenty-Third Claim, Twenty-Fourth Claim, Twenty-Seventh Claim, or Thirtieth Claim, because he argued in the alternative in the Petition that the Court should excuse his failure to exhaust those four claims as well. *See id.* at 18-19, 22-23, 45-46, 57-58.

Because Mr. Hanson admits that he did not exhaust, at a minimum, his Twenty-Fifth Claim, Twenty-Eighth Claim, Twenty-Ninth Claim, and Thirty-First Claim, Respondent is very clearly correct that Mr. Hanson's petition is a mixed petition. *See Rhines*, 544 U.S. at 271-72. As such, the Court believes that either dismissal or a stay and abeyance is appropriate in this case in order to allow Mr. Hanson to attempt to exhaust *at least* those four claims by filing a habeas petition in state court. *See id.* at 277. Although a prisoner need not pursue state collateral relief if circumstances would render such process ineffective to protect the prisoner's rights, *see* 28 U.S.C. § 2254(b)(1)(B), the circumstances of this case do not suggest that Mr. Hanson cannot effectively protect his rights by pursuing available state collateral review. *See DiSimone v. Phillips*, 518 F.3d 124 (2d Cir. 2008).

The Court notes that the various doctrines Mr. Hanson cites in his Petition to excuse his failure to exhaust state court remedies, such as the cause and prejudice standard and the fundamental miscarriage of justice standard, are in fact doctrines that excuse a state prisoner's *procedural default* of federal law claims. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). It does appear possible from the Appellate Court's opinion that Mr. Hanson *may* have defaulted

some of his federal constitutional claims under a state procedural rule. *See Ward v. Greene*, 267 Conn. at 546.[7] But Respondent does not argue in support of dismissal that *any* of Mr. Hanson's claims have been defaulted, and furthermore, the nature of the Appellate Court's resolution of those claims is somewhat ambiguous. *See Harris v. Reed*, 489 U.S. 255, 261-63 (1989) (holding that for a claim to be procedurally defaulted, the "state court *must actually* have relief on the procedural bar . . . for its disposition" by "clearly and expressly stat[ing] that its judgment rests on a state procedural bar"); Larry W. Yackle, *Federal Courts: Habeas Corpus* 200-01 (2003) (explaining the process for determining whether a state court's decision rested on a procedural bar, and whether a procedural bar provides an independent and adequate ground from decision).[8]

Thus, the Court believes that Mr. Hanson should include all twenty-nine of the claims that Respondent argues he has not yet defaulted in his state court habeas petition. Doing so will allow the state courts an opportunity to clarify whether, as a result of the Appellate Court's ruling on direct review, they believe that Mr. Hanson is now procedurally barred from raising any of those twenty-nine claims in state court. If the state courts determine that Mr. Hanson is procedurally barred from raising any of those claims as a result of his failure to adequately brief them on his direct appeal, then it will still be left for the federal courts to decide whether Mr. Hanson may nonetheless be able to pursue some or all of those claims at the federal court level.

---

[7] Even if the Connecticut courts would consider Mr. Hanson's federal claims procedurally defaulted under the rule of *Ward v. Greene*, 267 Conn. at 546, that conclusion would not prohibit federal court review of those claims unless the applicable default rule is one that is "firmly established and regularly followed" by Connecticut courts. *Ford v. Georgia*, 498 U,S, 411, 423-24 (1991). This Court cannot now comment on whether that rule was firmly established or regularly followed at the time of the Appellate Court's decision.

[8] Despite Mr. Hanson's assertion to the contrary, the Court does not believe that Respondent has waived the argument that some or all of Mr. Hanson's claims are procedurally defaulted. Instead, Respondent relies on Mr. Hanson's failure to exhaust some of his claims as a sufficient ground for dismissal, and reserves the possibility that some claims may already have been defaulted.

**B.**

In this case, AEDPA's one-year statute of limitations began to run on October 18, 2010, when the United States Supreme Court denied Mr. Hanson's petition for a writ of certiorari. *See Hanson*, 131 S. Ct. at 425. "The time during which a properly filed application for State postconviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *Id.* § 2244(d)(2). However, the statute of limitations *does not* toll during the period when a federal habeas petition is pending, *see Duncan v. Walker*, 533 U.S. 167 (2001), and the AEDPA clock has therefore continued to run in this case since October 18, 2010. Mr. Hanson urges the Court to stay this case and hold his Petition in abeyance, rather than dismissing it outright, because he worries that by the time that he completes the state court habeas process, the time for him to file a federal habeas petition will have passed.

Nevertheless, the Court still believes it is appropriate to dismiss, rather than stay and hold in abeyance, Mr. Hanson's Petition. Despite Mr. Hanson's worries, there is no real risk that dismissal will cause Mr. Hanson to lose any opportunity to seek federal review of his unexhausted claims. *See Zarvela*, 254 F.3d at 380. There are still more than six months left on the AEDPA clock in this case. As soon as Mr. Hanson files his habeas petition in the Superior Court – and he should do so as quickly as possible – the AEDPA clock will stop running until he has obtained review from the Connecticut Appellate Court and sought review from the Connecticut Supreme Court. *See* 28 U.S.C. § 2244(d)(2). At that time, Mr. Hanson will still have more than adequate time remaining on the AEDPA clock to refile his Petition in the federal district court. It is thus unnecessary for the Court to express any opinion regarding whether any

of the claims Mr. Hanson asserts in his Petition are potentially meritorious. *See Rhines*, 544 U.S. at 278.[9]

**IV.**

In sum, the Court concludes that Mr. Hanson has not properly exhausted all of his federal law claims, and that dismissal of his Petition rather than a stay and abeyance is appropriate under the circumstances of this case. Respondent's Motion to Dismiss [doc. # 13] is therefore GRANTED, and Mr. Hanson Petition [doc. # 1] is dismissed without prejudice. **The Clerk is directed to close this file.**

It is in Mr. Hanson's interest to wait to file another petition for a writ of habeas corpus in federal court until after he has filed a habeas petition in the Superior Court; appealed the Superior Court's eventual decision to the Appellate Court; and sought review of the Appellate Court's eventual decision by the Connecticut Supreme Court. He should do so as soon as possible in order to ensure that the AEDPA clock does not run out before he has an opportunity to seek review of his claims in federal court.

However, if Mr. Hanson insists on obtaining immediate federal court review of his exhausted claims, he must file a petition that raises *only* his First Claim and his Twenty-Sixth Claim, which Respondent concedes he has fully exhausted. The Court cautions Mr. Hanson that if he chooses to seek immediate review of those two claims, he may lose the opportunity to seek federal court review of his other twenty-nine claims. *See* 28 U.S.C. § 2244(b)(2) ("A claim presented in a second or subsequent habeas corpus application . . . that was not presented in a prior application shall be dismissed unless . . . (B) (i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and (ii) the facts

---

[9] The Court notes that it does not appear that Mr. Hanson has engaged in abusive litigation tactics or intentional delay. *See Rhines*, 544 U.S. at 278.

underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").

IT IS SO ORDERED.

/s/       Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: April 7, 2011.**